THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**REINALDO KIDANY CARRASQUILLO-RODRÍGUEZ,**<br><br>**Defendant.** | **Crim. No. 23-332 (ADC)** |

**OPINION AND ORDER**

On May 22, 2025, defendant Reinaldo Kidany Carrasquillo-Rodríguez ("defendant" or "Carrasquillo-Rodríguez") filed a motion for release pending appeal of his twenty-two-month sentence of imprisonment imposed by the Court on February 5, 2025. **ECF No. 86**. The government has submitted no opposition to defendant's motion.

To be entitled to bail pending appeal under the applicable law, Carrasquillo-Rodríguez must, among other things, establish that his appeal raises a substantial question of law or fact that, if decided in his favor, would likely result in the reversal of his conviction, a new trial, a sentence that does not include a term of imprisonment, or one reduced to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process. *See* 18 U.S.C. § 3143(b).

As explained below, the Court finds that Carrasquillo-Rodríguez is not likely to flee or pose a danger to the safety of another person or the community, and that his appeal is not taken

for purposes of delay. The Court also finds that recent First Circuit case law[1] developed since Carrasquillo-Rodríguez's sentencing on February 5, 2025, supports the contention that his appeal raises a substantial question of law or fact. Accordingly, for the reasons explained below, the Court **GRANTS** defendant's motion.

**I.     Procedural Background**

Defendant Carrasquillo-Rodríguez was arrested on August 28, 2023, after Homeland Security Investigations Task Force Officers had found 4.06 kilograms of cocaine in his checked bag at the Luis Muñoz Marín international airport. **ECF No. 1**, at 3. On August 23, 2023, Carrasquillo-Rodríguez was taken to the airport in a car and given a suitcase with an orange U.S.D.A. sticker attached. **ECF No. 56**, ¶ 16**.** Carrasquillo-Rodríguez was to be paid $2,000 to transport the bag to Orlando, Florida. *Id.*, ¶ 20. Carrasquillo-Rodríguez was informed that, once he arrived in Orlando, he should go to a pre-established address where a car would flash its lights at him, he would put the suitcase in the trunk of that car, and then the driver of the car

---

[1]After sentencing in this case, there are at least three recent First Circuit cases addressing the mitigating role adjustment, *United States v. Guía-Sendeme*, 134 F.4th 611, 618 (1st Cir. 2025); *United States v. Flores-Álvarez*, 2025 WL 1369300, at *3 (1st Cir. 2025) and *United States v. Guzmán-Ceballos, 144 F.4th (1st Cir. 2025)* – explained in more detail at *infra*, 13-14 – were published before the 2025 amendments to the United States Sentencing Commission Guidelines Manual ("Sentencing Guidelines"). In a similar vein, Amendment 794 to the Sentencing Guidelines reflects how courts should endeavor to apply the mitigating role adjustment in sentencing. Amendment 794, U.S. Sent'g Guidelines Manual, App'x C (Vol. IV) (U.S. Sent'g Comm'n 2025). In publishing Amendment 794, the Sentencing Commission explained that it intended to focus courts applying the mitigating role adjustment on comparing the defendant's culpability relative to "the other participants 'in the criminal activity.'" *Id.* Additionally, the Sentencing Commission explained that the amendment "provides a non-exhaustive list of factors for the court to consider in determining whether to apply a mitigating role adjustment . . . ." *Id.*

would hand him two envelopes filled with money, one for Carrasquillo-Rodríguez and the other for him to [take] bring back to Puerto Rico. *Id*., ¶ 18.

Although Carrasquillo-Rodríguez was not informed of the specific contents of the suitcase, he admitted believing that it was either "pasto" (marijuana) or cocaine. *Id*., ¶ 20-21. That is, he knew he was transporting a controlled substance. Carrasquillo-Rodríguez purchased (charging costs to this credit card) both his own airline ticket and a ticket for another drug courier, for which he was later reimbursed. **ECF No. 67**, at 2. Although he was only criminally charged for the August 23, 2023 trip, defendant admitted that this was his third such venture. **ECF No. 57**, at 3. Investigations revealed and Carrasquillo-Rodríguez admitted that his consensual partner, who worked at the airport, would inform him of law enforcement presence in order to avoid detection in K-9 checkpoints. **ECF No. 56**, ¶ 21.

On September 7, 2023, a grand jury returned a two-count indictment against Carrasquillo-Rodríguez, charging him with (1) conspiracy to possess with intent to distribute a controlled substance (21 U.S.C. §§ 841(a)(1), (b)(1)(C), 846) and (2) possession with intent to distribute a controlled substance (21 U.S.C. §§ 841(a)(1), (b)(1)(C); 18 U.S.C. § 2). **ECF No. 12**, at 1-2. Carrasquillo-Rodríguez waived his right to a jury trial and entered a plea of guilty as to both counts of the indictment on May 29, 2024. **ECF Nos. 33-34.** The Court sentenced Carrasquillo-Rodríguez on February 5, 2025, to a term of imprisonment of twenty-two months, a term of supervised release of three years, and an assessment fee of $200. **ECF No. 73**.

At sentencing, defense argued for application of the mitigating role adjustment under U.S.S.G. § 3B1.2. Defense claimed that:

> [T]his [mitigating role] adjustment, the [sentencing guidelines] amendment was in 2015, and the Commission specifically stated it's because it's being under applied and inconsistently applied. And it added that language, that mule language, essentially, that says if the person is just being paid to transport the drugs and has no proprietary interest, makes no money off of it and is just doing one particular task, is not sort of the organizer, then that indicates a minor role. And that's exactly what we have here.
> . . .
> And, again, it's just a few points in the guidelines, like anything else. It's not negating [defendant's] culpability in the offense. It's recognizing that there are people who are more involved, who are doing more here, who are perpetuating these crimes on a bigger scale, and those people should be punished more so than someone who is just being paid from A to B. He made a mistake. He is culpable, and we are here for that.
> . . .
> [I]f you look at all of the applicable factors, if you look at the spectrum of culpability, he certainly is at the very least substantially less culpable than the average participant. And that's the relevant standard here.

Sentencing Tr., **ECF No. 81**, at 8:14-22, 9:6-13, 11:22-12:1. In further support of his argument, defendant asserts that he was "the least culpable," *id.*, 9:22-23, in the criminal scheme (although the Court pointed out that there were others in the scheme, such as "the drivers who took [defendant] to the airport which are less culpable than him," *id.*, at 10:15-16). Defense argued that those more culpable than defendant included:

> [I]dentified people on the record. . . this guy Steven who seems to be the real organizer here; recruiting, organizing, profiting, does this a lot. The people on the other side who received him, received the drugs, distribute the drugs, give him the money to be sent back to Steven. And he just gets a small quantity. You have these people who are on that spectrum far more culpable. . . .

> . . .
> And someone also put the U.S.D.A. sticker on there, which I think adds criminal culpability, because that in and of itself could be a crime. So that's someone who is higher than Mr. Carrasquillo. He carried it from A to B, the suitcase from A to B.

*Id.*, at 10:3-12, 10:23-25. The defense further argued that:

> [T]here might be mules too that may not qualify [for the adjustment], someone who makes a lot more discretionary decisions because they are an entrusted member of the organization, for example. . . [Defendant] was just a guy working at a store in a mall, and someone said, "Hey, you want some quick money?" And he said, "Okay, sure," and made that, you know, biggest mistake of his life because here he is. But beyond that, if you look at all of the applicable factors, if you look at the spectrum of culpability, he certainly is at the very least substantially less culpable than the average participant.

*Id.*, at 11:11-25.

> The government countered defendant's argument with the following:
>
> The Defendant is adding a bunch of facts that are not in the record and identifying participants who may not even be culpable and giving them, based on speculation, the roles that they would like to be able to make their argument.
> . . .
> There is nothing in the record to indicate that anyone at U.S.D.A. committed the offense. The fact in the record is that the Defendant showed up with a bag to the airport which appeared to already have a U.S.D.A. sticker. We don't know how that sticker got there, and we can't speculate in order to be able to conduct this analysis.
> . . .
> [Defendant] refers to the people who are unidentified, who essentially received the drugs in Orlando. The only person who someone identified in the record is an unidentified driver who the Defendant in his post-arrest statement mentioned that he would get – once he went to Orlando, he would get in a car, which I believe was an Uber. So we can't say that that Uber was involved in the offense. And then he would arrive at a hotel, him himself, and then he would meet with someone person who would flash their lights, receive the suitcase, and exchange two envelopes

**Crim. No. 23-332 (ADC)**                                                                                                      **Page 6**

> with money, one of which was for the Defendant and one of which was for another person who he identifies as Steven.
>
> . . .
>
> So the only person – the record only supports one person in Orlando who is receiving the drugs. We don't know who that is. And all we know about them is that they are at a hotel room, they flash their lights, they receive the suitcase, and they exchange that for envelopes of money, which we don't even know if that person knows that the envelope contains money or what they contain.

*Id.*, at 13:24-14:2, 14:5-10, 14:18-15:4, 15:5-11. The government also argued that defendant was more culpable than others in the scheme, highlighting that:

> [Defendant] had a consensual partner who worked at the airport who helped him identify the presence of law enforcement. So that seems to indicate that he is exerting control over this person to further the drug trafficking endeavor.
>
> . . .
>
> Similarly, he bought another ticket for another drug smuggler, indicating that if he is buying tickets for other people, he has a higher level within the venture than that other person.

*Id.*, at 15:19-16:2. The government emphasized, too, that:

> The Defendant was entrusted to make the arrangements of his flight. The Defendant took steps to avoid law enforcement detection, even involving someone else to evade law enforcement detection. So he knows the importance of evading law enforcement detection. This isn't just some person who, you know, they just picked up at the airport and said, "Here, carry this suitcase. Don't ask questions." He knew very well what he was doing, and he knew the importance of ensuring the success of the venture.

*Id.*, at 16:23-17:6. Based on this, the government claimed that "the record is clear that [defendant] is more culpable than all those other hypothetical participants," and that it was "not clear that Steven is this mega organizer that the Defendant is making him out to be. I would argue that

**Crim. No. 23-332 (ADC)**                                                                                                                     **Page 7**

the Defendant, who was the person solely responsible for this drug load and for two other drug loads, is more culpable based on this record." *Id.*, at 17:24-18:4.

The Court, after hearing both parties' arguments, stated that it "may agree that the minor role participation adjustment had been scarcely applied," but that "in this particular case" it should not apply. *Id.*, at 20:24-25, 21:4. The Court found that:

> Even if I may agree that the Defense correctly asserts what Application Note 3 reads and the way it goes and the analysis that has been done, I have to agree, the theory of the Defense involving too many hypotheticals. And, of course, each one of them fashions towards favoring the Defendant.
> . . .
> So if we look to his statements, by buying a flight ticket, directly charging his and that of this person to his credit card the second or third time around, I think it speaks in high volumes as to the fact that the relationship that had been developed with the individuals involved was that of trust. Because he was confident that he was going to be reimbursed by using his credit card in advance to pay for trips and to pay for his own trip. And even if he paid for the ticket of the other person, he is facilitating the transactions of the organization until a later time in which he is repaid.
> . . .
> [W]hat we have for certain, based on his admissions, he knew of the drugs. . . More so, we are speculating, and counsel speculates as to whether there was an agriculture agent involved in giving the sticker.
> . . .
> [H]e availed himself of his consensual partner's assessment because she worked at the airport, and he did that in order to learn in advance to identify law enforcement presence and how to avoid detection. I think he has invested himself in more than a usual suitcase carrier that is recruited at a bar and t[r]ies to receive some money and takes a suitcase through the airport, in times in which the way it's done is nonsensical that the person gets trapped as they walk in. This is not the case.

*Id.*, at 21:6-11, 22:11-21, 22:10-21, 23:19-21, 24:6-14. The Court held that there would be "[n]o minor adjustment based on the record and the evidence that I have present here." *Id.*, at 24:19-20.

Carrasquillo-Rodríguez filed a notice of appeal with the First Circuit on February 12, 2025. **ECF No. 78**. Following the docketing of his appeal, on May 22, 2025, Carrasquillo-Rodríguez filed a motion for release on bond pending appeal. **ECF No. 86**.

## II.    Legal Standard

Release pending appeal is governed by 18 U.S.C. § 3143. *See* Fed. R. Crim. P. 46(c). This section provides for the continued detention of a defendant convicted and sentenced to a term of imprisonment pending appeal. 18 U.S.C. § 3143(b). "[T]here is no presumption in favor of release pending appeal; on the contrary. . . detention (following conviction and sentencing) is mandatory unless the defendant can establish that one of the exceptions contained in the statute applies." *United States v. Colón-Muñoz*, 292 F.3d 18, 20 (1st Cir. 2002). The burden of establishing that an exception applies rests squarely on the defendant. *United States v. Colón-Berríos*, 791 F.2d 211, 214 n.4 (1st Cir. 1986) ("In enacting § 3143, Congress placed the burden as to all elements bearing on whether to grant bail pending appeal on defendants.").

Under 18 U.S.C. § 3143(b)(1), a defendant must establish:

(A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and

>    (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
>       (i) reversal,
>       (ii) an order for a new trial,
>       (iii) a sentence that does not include a term of imprisonment, or
>       (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1).

With regards to the second prong, it may be divided into "two distinct requirements: (1) that the appeal raise a substantial question of law or fact and (2) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed." *United States v. Bayko*, 774 F.2d 516, 522 (1st Cir. 1985).[2]

A "substantial question of law or fact" is one that is "a close question or one that very well could be decided the other way." *United States v. Zimny*, 857 F.3d 97, 100 (1st Cir. 2017) (citing *Bayko*, 774 F.2d at 523). This determination is to be made on a case-by-case basis, and the mere "possibility of reversal" is not enough to make a question a substantial one. *Bayko*, 774 F.2d at 523 ("The finding made by the district court was that there was 'a possibility of reversal.' This cannot mean 'a "close" question or one that very well could be decided the other way.'").

If the defendant establishes the existence of a substantial question, then the Court

---

[2] The Court notes that the version of the statute cited in *Bayko* did not include language equivalent to 18 U.S.C. § 3143(b)(1)(B)(iii-iv).

"proceeds on the assumption that the substantial question of law or fact 'is determined favorably to defendant on appeal.'" *Zimny*, 857 F.3d at 100-01 (citing *Bayko*, 774 F.2d at 522). Then, the question is limited to whether it is likely that such decision will result in one of the four outcomes listed in 18 U.S.C. § 3143(b)(1)(B). Whether this likelihood test is met depends on whether the error raised on appeal is harmless or not. *Bayko*, 774 F.2d at 523 ("[T]he language in the statue which reads 'likely to result in reversal or an order for a new trial' is a requirement that the claimed error not be harmless or unprejudicial.")*.*

## III. Discussion

### A. Carrasquillo-Rodríguez is not likely to flee or pose a danger to the safety of another person or the community.

Carrasquillo-Rodríguez argues that he is not likely to flee. **ECF No. 86**, at 3. The government has provided no opposition to this argument. Carrasquillo-Rodríguez has complied with all his conditions of release since August 31, 2023, and has continued to comply as the Court has extended his voluntary surrender date. *See id*. During his sentencing hearing on April 1, 2025, the Court granted Carrasquillo-Rodríguez's request to surrender voluntarily and allowed him to do so after the completion of his degree for audio engineering on June 1, 2025. Sentencing Tr., **ECF No. 81**, at 55:3-56:12. Further, on May 12, 2025, the Court granted a motion from his probation officer requesting the modification of some of these conditions, given his full compliance with conditions of release. **ECF Nos. 84**, **85**. On May 30, 2025, the Court granted an extension for Carrasquillo-Rodríguez's voluntary surrender until July 7, 2025, to allow him to

finish his degree. **ECF No. 88**. On July 3, 2025, and August 28, 2025, the Court again granted extensions of time for voluntary surrender while the instant motion for bail pending appeal remained pending. **ECF Nos. 91**, **95**. Moreover, as Carrasquillo-Rodríguez's motion explains, he has "strong community ties to Puerto Rico, where he lives with his grandmother and most of his family also resides in the area." **ECF No. 86**, at 3. The Court finds that Carrasquillo-Rodríguez is unlikely to flee.

Neither is Carrasquillo-Rodríguez likely to pose a danger to the safety of another person or the community. As the presentence report observed, this is Carrasquillo-Rodríguez's first arrest and conviction, and the offense was a nonviolent one. **ECF No. 56**, ¶ 108. He has no history of violence.

All the above facts lead the Court to conclude that Carrasquillo-Rodríguez is not likely to flee or pose a danger to the safety of another person or the community. Nothing has been brought to the Court's attention evincing that any circumstances have changed, and thus the Court finds that Carrasquillo-Rodríguez meets the requirements of 18 U.S.C. § 3143(b)(1)(A).

**B.     The appeal is not for purposes of delay.**

Carrasquillo-Rodríguez states that his appeal is not taken for purposes of delay, but to contest the validity of the Court's denial of the mitigating role adjustment. **ECF No. 86**, at 4. Nothing more is argued with regards to this requirement, and the government has not provided any opposition to this point. Seeing no reason to find otherwise and considering the recent

relevant First Circuit case law on the mitigating role adjustment, (all determinations rendered after sentencing in this case) the Court also finds that the appeal is not taken for purposes of delay.

### C.   The appeal raises a substantial question law or fact which, if decided favorably for Carrasquillo-Rodríguez, would likely result in reversal.

To determine whether a defendant has raised a substantial question of law or fact, courts engage in a two-pronged analysis. *Zimny*, 857 F.3d at 99. First, the defendant must fulfill the "substantiality prong," meaning that he must present "a close question or one that very well could be decided the other way." *Id.* at 100. Then, if there is indeed a substantial question of law or fact, courts consider the "likelihood prong" and presume "that the substantial question . . . is determined favorably to defendant on appeal." *Id.* (citation modified). This second prong is satisfied if the favorable decision would be likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed. *Bayko*, 774 F.2d at 522. The error cited in the defendant's appeal "must not be harmless or unprejudicial." *Id*. at 523.

Carrasquillo-Rodríguez argues that, were he to prevail on appeal regarding the application of the mitigating role adjustment, his sentence could be greatly reduced. **ECF No. 86**, at 5. The mitigating role adjustment allows the district court to reduce a defendant's offense level when the defendant is a minor or minimal participant in the relevant criminal activity. *See* U.S.S.G. §§ 3B1.2(a)-(b). These reductions can be "a four-point reduction if [defendant] is a minimal participant; a two-point reduction if he is a minor participant; and a three-point

reduction if his culpability falls somewhere between minimal and minor." *United States v. Walker*, 89 F.4th 173, 185 (1st Cir. 2023) (citing U.S.S.G. § 3B1.2). The defendant "bears the burden of proving, by a preponderance of the evidence, that he is entitled to [a mitigating role adjustment]." *United States v. Arias- Mercedes*, 901 F.3d 1, 5 (1st Cir. 2018) (quoting *United States v. Pérez*, 819 F.3d 541, 545 (1st Cir. 2016)).

The First Circuit has clarified, in case law following Carrasquillo-Rodríguez's sentencing, that application of the mitigating role adjustment under U.S.S.G. § 3B1.2 requires that the Court engage in the following analysis:

> First, the district court must identify the universe of participants involved in the relevant criminal activity. Second, after identifying the universe of participants, the district court must order each participant along a continuum based on the degree of culpability in the criminal activity. Those who are primarily responsible stand on one end, while the least culpable participants . . . stand at the opposite end. Third, the district court then must identify the average participant across all likely participants in the criminal scheme.

*United States v. Guzmán-Ceballos*, 144 F.4th 1, 7 (1st Cir. 2025) (citation modified). If, after this assessment, the defendant is "substantially less culpable than the average participant," the mitigating role adjustment should be applied. U.S.S.G. § 3B1.2 cmt. n.3(A). In assessing the defendant's relative culpability, the court should consider the five factors outlined in U.S.S.G. § 3B1.2 cmt. n.3(C) and the totality of the circumstances evidenced in the record, but should not consider "suppositions woven entirely out of gossamer strands of speculation and surmise."

*United States v. Guía-Sendeme*, 134 F.4th 611, 618 (1st Cir. 2025); *United States v. Flores-Álvarez*, 2025 WL 1369300, at *3 (1st Cir. 2025).

The Court notes at the outset that it is not being asked to reconsider its determination denying the mitigating role adjustment in defendant's sentencing. The Court here is only being asked to determine whether the issue of applying the mitigating role adjustment presents a "substantial question" on appeal. In that sense, the Court considers that Carrasquillo-Rodríguez has identified a substantial question of law or fact: whether, when placed along a continuum of culpability with the "broader universe of reasonably discernible participants," *Flores-Álvarez*, 2025 WL 1369300, at *3, involved in the crime, he is "substantially less culpable than the average participant," U.S.S.G. § 3B1.2 cmt. n.3(A). The recent post-sentencing First Circuit cases to which Carrasquillo-Rodríguez cites persuade the Court that the issue of whether the mitigating role adjustment might apply to a participant in drug trafficking scheme is a substantial question of law or fact. **ECF No. 86**, at 6-7 (citing *Guía-Sendeme*, 134 F.4th 611; *United States v. Flores-Álvarez*, 2025 WL 1369300 (1st Cir. 2025)).

In *Flores-Álvarez*, the defendant was interdicted at Luis Muñoz Marín international airport after he was found to be transporting just over 8 kilograms of cocaine in a checked bag on a trip to Philadelphia. *Flores-Álvarez*, 2025 WL 1369300, at *1. During sentencing, the defendant argued that the Court should apply the mitigating role adjustment, given that there were other participants in the larger drug shipment scheme compared to which he was less

culpable. *Id.*, at *2. The district court denied application of the adjustment, focusing on the defendant's discretion in accepting and accomplishing the drug transport. *Id.*, at *2. The First Circuit vacated the sentence and remanded, holding that the district court had "focused too narrowly on the steps [the defendant] himself took in bringing this particular shipment of drugs through the airport . . . without considering the broader universe of reasonably discernible participants who 'planned the trip,'" including "those who procured the narcotics in the suitcase and the person in Philadelphia scheduled to receive the shipment." *Id.*, at *3.

In *Guía-Sendeme*, the defendant pled guilty to participating in a venture to smuggle 135 kilograms of cocaine from the Dominican Republic to Puerto Rico. *Guía-Sendeme*, 134 F.4th 611, 614. At his sentencing, the defendant argued for the application of the mitigating role reduction, given that he was substantially less culpable than the average participant in the full universe of the criminal scheme. *Id.*, at 619. The First Circuit agreed, vacating his sentence, remanding for resentencing, and holding that the district court should have "considered the record evidence to determine whether there were other discernable participants in the drug shipment." *Id.*, at 623.

Carrasquillo-Rodríguez argued at his sentencing hearing for application of the mitigating role adjustment, alleging that the universe of participants in the crime included "this guy Steven who seems to be the real organizer here; recruiting, organizing, profiting," Sentencing Tr., **ECF No. 81**, at 10:6-7, "[t]he people on the other side who received him, received the drugs, distribute

the drugs, give him the money to be sent back to Steven," *id.*, at 10:8-10, and "[s]omeone else [who] picked the flight, someone else [who] told him which flight to buy, where to go, reimbursed him for that flight, picked him up in the Uber, handed him a suitcase that already [had] the U.S.D.A. sticker on it," *id.*, at 6:16-19. Carrasquillo-Rodríguez argued that, among all these participants, there were "people who are on that spectrum far more culpable" than he was, and that he was "certainly . . . at the very least substantially less culpable than the average participant." *Id.*, at 10:11-12, 11:24-25; *see also* **ECF No. 63**, at 6-8.

At sentencing, the government argued that "[t]he [d]efendant [is] adding a bunch of facts that are not in the record and identifying participants who may not even be culpable and giving them, based on speculation, the roles that they would like to be able to make their argument." Sentencing Tr., **ECF No. 81**, at 13:24-14:2. The government alleged that "the record only supports one person in Orlando who is receiving the drugs," *id.*, at 15:5-6, "a consensual partner who worked at the airport who helped [defendant] identify the presence of law enforcement," *id.*, at 15:12-15, and another drug smuggler for whom defendant bought a ticket, but that the defendant "fail[ed] to acknowledge other participants" who are less culpable than him. *Id.*, at 15:19-20, 24. Further, the government argued that "it is not clear that Steven is this mega organizer" and that defendant "was the person solely responsible for this drug load and for two other drug loads." *Id.*, at 17:24-18:3.

Although at sentencing, the Court agreed with the government and found that defendant's evidence of the purported co-participants was largely speculative, the First Circuit's recent treatment of the mitigating role adjustment application in drug trafficking cases requiring for the specific analysis of the factors under USSG § 3 B1.2 and § 2D1.1; strongly suggests that, on these facts, the issue of defendant's relative culpability may be a "close call." *Zimny*, 857 F.3d at 99, 100. It is clear from both defense and the government that there are indeed multiple participants involved in the scheme on the record, including: the individual who recruited Carrasquillo-Rodríguez at the smoke shop, Carrasquillo-Rodríguez's partner at the airport who informed him of the K-9 checkpoints, the individual who drove Carrasquillo-Rodríguez to the airport, the individual who packed and gave Carrasquillo-Rodríguez the suitcase with the orange U.S.D.A. sticker, the individual for whom Carrasquillo-Rodríguez bought a flight, the individual who received the drugs in Orlando, and Steven. **ECF No. 56**, ¶¶ 8, 14-16, 19, 20, 21. The issue of whether Carrasquillo-Rodríguez is more or less culpable than the "average participant" in this scheme, based on the spectrum of culpability of all the individuals involved, constitutes a "close call" that could very well be decided somehow favorably to defendant, resulting in a lesser sentence were any adjustment to be allocated for his role in the offense.[3] *See Zimny*, 857 F.3d at 99, 100. The recent First Circuit precedent on the issue, too, brings into relief

---

[3] The final determination as to whether a role adjustment is appropriate is now also subjected to the amendments enacted by the Sentencing Commission on November 1, 2025; specifically to USSG § 2D1.1and 3B1.2.

that Carrasquillo-Rodríguez's culpability relative to the other universe of participants is an important factual question in the mitigating role analysis. Thus, Carrasquillo-Rodríguez satisfies the first prong of the substantial question inquiry.

Second, Carrasquillo-Rodríguez satisfies the likelihood prong if the Court presumes that the "substantial question is determined favorably to [Carrasquillo-Rodríguez] on appeal, [and] that decision is likely to result in reversal" or the other outcomes contemplated in 18 U.S.C. § 3143(b)(1)(B). *Bayko*, 774 F.2d at 522. Should the First Circuit Court of Appeals find that Carrasquillo-Rodríguez was "substantially less culpable than the average participant" in the crime and that the mitigating role adjustment should be applied, this would constitute reversible error. *Guía-Sendeme*, 134 F.4th 611; *Flores-Álvarez*, 2025 WL 1369300; *Guzmán-Ceballos*, 144 F.4th 1. Because Carrasquillo-Rodríguez has presented a substantial question of law that would result in the vacatur and remand if resolved in his favor, the Court concludes that he has satisfied the likelihood prong of the inquiry.

**IV.    Conclusion**

Carrasquillo-Rodríguez has met the burden of establishing his entitlement to relief under 18 U.S.C. § 3143(b)(1), and accordingly his request for bail pending appeal is **GRANTED**. Carrasquillo-Rodríguez must continue to comply with the conditions of release. **ECF Nos. 73, 85**.

The Court of Appeals is requested to consider the above and, pursuant to Fed. R. App. P. 12.1 and Fed. R. Crim. P. 37, remand the case to enable the District Court to proceed with resentencing.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 4th day of March, 2026.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**
